**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Theodore (Ted) BERKEY,**
**Defendant–Appellant.**

**No. 98–1221.**

United States Court of Appeals,
Seventh Circuit.

Submitted Sept. 29, 1998. *

Decided Dec. 1, 1998.

---

* On September 28, 1998, Defendant–Appellant filed a motion to waive oral argument. Consequently, this case was decided on the briefs of the parties.

Thomas Edward Leggans, Office of the United States Attorney, Criminal Division, Fairview Heights, IL, for Plaintiff–Appellee.

Douglas A. Forsyth, Sr., St. Louis, MO, for Defendant–Appellant.

Before POSNER, Chief Judge, BAUER and WOOD, Jr., Circuit Judges.

BAUER, Circuit Judge.

Defendant Theodore (Ted) Berkey pled guilty pursuant to an open plea agreement to

one count of Conspiracy to Distribute Marijuana and Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846. Berkey now appeals his sentence, claiming that the district court erred by: (1) relying on uncorroborated testimony of co-conspirators in calculating his base offense level; (2) enhancing his base offense level for possession of a firearm during the commission of the offense; and (3) including a prior marijuana offense in the calculation of his criminal history score. We find all of the defendant's arguments to be without merit and affirm his sentence in every respect.

## I. BACKGROUND

On November 7, 1996, a federal grand jury returned a second superseding indictment charging the defendant, Theodore (Ted) Berkey ("Berkey"), and several others with conspiracy to knowingly and intentionally distribute marijuana and methamphetamine in violation of 21 U.S.C. sec.sec. 841(a)(1) and 846 from November 1985 until March 31, 1996. The indictment also contained a forfeiture charge for certain real and personal property obtained or used in the charged drug trafficking conspiracy. The forfeiture charge is not at issue in this appeal. Berkey withdrew his plea of not guilty and entered a plea of guilty on December 2, 1996. A trial was held for the co-defendants.

Berkey's sentencing hearing occurred on July 10, 1997. At the sentencing hearing, the district judge adopted the factual findings contained in Berkey's Presentence Investigation Report ("PSI"), prepared by a senior probation officer. The PSI stated that Berkey's role in the conspiracy began sometime in the early to mid 1990's, and that he was a main supplier of drugs, shipping extremely large quantities of marijuana and crystal methamphetamine from Arizona to Illinois. The report also stated that he pooled his money with other co-conspirators to further its operations. Much of the information in the PSI came from the testimony of co-conspirators at the trial of Berkey's co-defendants and from coconspirators' statements made to investigators. Based on this information, the probation officer determined that Berkey was accountable for a total of 6,960 pounds (or 3,157.05 kilograms) of marijuana and 200 pounds (or 90.72 kilograms) of crystal methamphetamine. Additionally, the PSI stated that when Berkey was arrested, a .357 caliber handgun was found at his residence.

Because of this conduct, the probation officer determined that Berkey's base offense level, based on the quantity of marijuana and the converted quantity of methamphetamine, was 38. A two level enhancement was added because Berkey possessed a firearm during the commission of the offense and three points were added for his role as a major participant in the conspiracy. Three points were then subtracted for his acceptance of responsibility, giving him a final base offense level of 40. The PSI placed Berkey in the criminal history category of II with three criminal history points—one for a prior marijuana sentence and two for committing the instant offense while on probation. At his sentencing hearing, Berkey raised only one objection to the factual findings contained in the PSI. The objection was to the two level enhancement for possession of a firearm while committing the instant offense. The sentencing judge denied the objection and sentenced Berkey to 360 months imprisonment, which was in the middle of the applicable sentencing range, followed by five years of supervised release. The judge also imposed a $10,000 fine. Berkey filed this appeal of his sentence on January 26, 1998.

## II. ANALYSIS

### A. Reliance on Presentence Investigation Report

Berkey argues that the district court erred in determining his sentence because it relied on unreliable, uncorroborated information contained in the PSI. At his sentencing hearing, however, the only objection to the PSI that Berkey made was to the two level weapon enhancement, discussed *infra*. Since Berkey failed to raise any objections below with respect to the quantity of drugs or his role in the conspiracy, we examine the district judge's reliance on the PSI's findings for plain error. Fed.R.Crim.P. 52(b).

At the sentencing hearing, the district judge adopted the factual findings in the PSI as his own. So long as the facts con-

tained in the PSI bear "sufficient indicia of reliability to support their probable accuracy," a sentencing judge may adopt them to support his findings for such things as the quantity of drugs attributable to the defendant. *United States v. Burke*, 148 F.3d 832, 835 (7th Cir.1998). A sentencing judge is not bound to the Federal Rules of Evidence when considering information to determine the defendant's sentence; thus, he may rely on hearsay and statements from co-conspirators so long as he finds the statements reliable. *Id.* at 836–37. No independent factual findings need to be made for uncontroverted facts. *Id.* at 835.

Much of the information contained in Berkey's PSI came from co-conspirators. The statements were either made to investigators or came from testimony under oath at the trial of Berkey's codefendants. The sentencing judge found this information to be reliable. We see no reason to find that the district court's determination constituted any error, plain or harmless. Therefore, the findings as to the amount of drugs attributable to Berkey and his role in the conspiracy as contained in the PSI will stand.

**B. Possession of a Weapon Enhancement**

■■■ Because of the increased danger of violence when drug traffickers carry weapons, the Sentencing Guidelines mandate that a defendant's base offense level be enhanced by two levels if he possessed a dangerous weapon, which includes a firearm, during the commission of the offense, unless it is "clearly improbable" that the weapon was used in connection with the offense. U.S.S.G. § 2D1.1(b)(1), n.3. A district court's finding that the defendant possessed a firearm during the offense is a factual one that will only be reversed for clear error. *United States v. Tyler*, 125 F.3d 1119, 1122 (7th Cir.1997).

■■■ In a conspiracy case, an enhancement under U.S.S.G. § 2D1.1(b)(1) is appropriate if the government can prove by a preponderance of the evidence that the defendant possessed a firearm during the course of the conspiracy. *United States v.*

*Wetwattana*, 94 F.3d 280, 284 (7th Cir.1996). Once the government proves this, the burden shifts to the defendant to show that it was clearly improbable that the weapon was used in connection with the offense. *Tyler*, 125 F.3d at 1122. For purposes of a weapons enhancement, the government need not show that the defendant used the firearm during the commission of a drug sale, but only that he possessed the firearm during the offense that led to the conviction, or during relevant conduct, as defined by U.S.S.G. § 1B1.3. *United States v. Cain*, 155 F.3d 840, 843 (7th Cir.1998). This is a relatively low threshold for the government to meet.

■■■ Berkey contends that it was "clearly erroneous to determine that a handgun was used in furtherance of a conspiracy merely because it was present in [his] residence." Appellant's Brief at 8–9. Berkey seems to have confused the burden of proof for an enhancement under § 2D1.1(b)(1) with that for a conviction under 18 U.S.C. § 924(c),[1] which requires proof of active employment of the firearm by the defendant. *Bailey v. United States*, 516 U.S. 137, 142, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). For an enhancement under the Sentencing Guidelines, the government only needs to show by a preponderance of the evidence that the defendant *possessed* the firearm during the relevant conduct of the offense. *United States v. Booker*, 115 F.3d 442, 443 (7th Cir.1997) (emphasis added). So it is entirely possible that a defendant who cannot be convicted under 18 U.S.C. § 924(c) can, nonetheless, have his base offense level enhanced for mere possession of a firearm if he cannot prove that it was clearly improbable that the gun was used in connection with the offense.

The findings in his PSI state that Berkey had a loaded .357 caliber handgun in his residence at the time he was arrested. In addition, a coconspirator told investigators that he had seen Berkey, as well as other coconspirators, in possession of firearms on numerous occasions. At his sentencing hearing, Berkey raised the objection that his base offense level should not be enhanced because

---

**1.** 18 U.S.C. § 924(c) states "[w]hoever (1) uses a firearm to commit any felony for which he may be prosecuted in a court of the United States ... shall ... be sentenced to a term of imprisonment for not less than one year nor more than ten years." *Id.*

there was no evidence that the firearm was used in furtherance of the conspiracy. The sentencing judge explained that the government does not have to prove that he used the gun in furtherance of the conspiracy, but only that he possessed the gun during course of the conspiracy. Berkey does not now contest the factual findings contained in the PSI, nor did he contest them at his sentencing hearing. He merely states that there is not enough evidence to show that the weapon was used in furtherance of the conspiracy. Given that the weapon was found in Berkey's residence when he was arrested, the unrefuted testimony that Berkey had been seen on numerous occasions with a firearm, (and the fact that possession of the firearm in proximity to a drug transaction is irrelevant for sentencing enhancement purposes in a conspiracy case), we find that there was ample evidence for the district court to find that the government proved by a preponderance of the evidence that Berkey possessed the firearm during the course of the conspiracy. Berkey offered no evidence to show that it was clearly improbable that the gun was used in connection with the offense. The district court's finding was not clearly erroneous, and the two level enhancement is affirmed.

### C. Criminal History Calculation

Lastly, Berkey argues that the sentencing judge erred in calculating his criminal history by adding one point for a conviction for attempt to possess marijuana for sale in July of 1988. Berkey contends that since the indictment charges that he had been involved in the instant conspiracy since November of 1985 and the conduct of his 1988 conviction is essentially the same as that charged here, then his previous conviction is part of the instant offense and not a prior sentence as defined by U.S.S.G. § 4A1.1. Again, Berkey failed to raise this objection at his sentencing hearing, and we will review the district court's finding for plain error. Fed R.Crim. P. 52(b).

Under the Sentencing Guidelines, the sentencing judge must increase the defendant's criminal history score for certain sentences prior to the instant offense. U.S.S.G. § 4A1.1. A prior sentence is "any sentence previously imposed ... for conduct *not part of the instant offense.*" U.S.S.G. § 4A1.2 (emphasis added). Conduct that is part of the instant offense is defined as relevant conduct, as spelled out in § 1B1.3 of the Sentencing Guidelines. U.S.S.G. § 4A1.2, n. 1. Determining whether conduct that resulted in a prior sentence is part of the instant offense is a fact-specific inquiry. *United States v. Hopson,* 18 F.3d 465, 468 (7th Cir. 1994), *cert. denied,* 512 U.S. 1243, 114 S.Ct. 2759, 129 L.Ed.2d 874 (1994). The court can look beyond the elements of the two offenses, and may look at other factors such as temporal and geographic proximity, common victims, and a common criminal plan or intent of the two offenses. *Id.* (citing *United States v. Escobar,* 992 F.2d 87, 89 (6th Cir.1993)).

Berkey suggests that his 1988 conviction was for an act committed in furtherance of the instant conspiracy since the government does not allege that he ever trafficked narcotics without the help of his co-conspirators. Additionally, he argues that including his prior sentence in the calculation of his criminal history would, in effect, punish him twice for that prior offense—the probation that he already served and the enhanced sentence in this case. We find both of these arguments to be without any merit.

In the PSI's description of the 1988 offense, none of the other members of the instant conspiracy are mentioned; however, there is mention of different individuals who were arrested with Berkey in 1988. Furthermore, the instant indictment charges Berkey with conspiracy to distribute methamphetamine as well as marijuana. There was no mention of methamphetamine in connection with Berkey's 1988 offense. While not dispositive, the additional fact that the prior offense occurred eight years before this one further weakens Berkey's argument. Based on the information in the record, we conclude that the sentencing judge's adoption of the factual findings from the PSI that Berkey's prior offense was not part of the instant conspiracy was not plain error. Even if the sentencing judge committed error by determining that the prior offense was separate and distinct from the instant offense, it would not affect Berkey's sentence because he would still be within the criminal history

category of II for committing the instant offense while on probation.

## III. CONCLUSION

For the reasons set forth above, we AFFIRM Berkey's sentence.