**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Alaba OLUSANYA, Defendant–Appellant.**

No. 01–3778.

United States Court of Appeals, Seventh Circuit.

Argued June 12, 2002.

Decided June 21, 2002.

Before MANION, ROVNER, and WILLIAMS, Circuit Judges.

## ORDER

In May 2001 Alaba Olusanya pleaded guilty to one count of possession with intent to distribute more than one kilogram of heroin in violation of 21 U.S.C. § 841(a)(1). The district court sentenced him to 120 months' imprisonment, five years' supervised release, a $1000 fine, and a $100 special assessment. On appeal Olusanya challenges the district court's determination that he did not qualify for a "safety valve" reduction that would have allowed the district court to sentence him below the statutory mandatory minimum. *See* 18 U.S.C.A. § 3553(f); U.S.S.G. § 5C1.2. We affirm.

On January 31, 2001, members of the Heroin Initiative Task Force sent a confidential informant to Olusanya's home to purchase heroin and supplied the informant with $4000 to be used to repay a debt the informant owed to Olusanya. The informant reported that he paid the $4000 to Olusanya and then asked to be advanced another six bags (approximately 600 grams) of heroin. When the informant emerged from Olusanya's home, he provided the agents with 607.3 grams of heroin, which he stated were given to him by

Olusanya. Upon leaving his home, Olusanya was arrested and the $4000 was found in his pockets. A search of his home, pursuant to a warrant, revealed another 1,385 grams of heroin.

In the months following his arrest, Olusanya participated in four debriefing sessions with the government. During those conversations he provided the government with information concerning his associate, Rafeal Okafor. During those sessions, Olusanya admitted having twice met at the bus station drug couriers traveling from Nigeria, Olusanya's home country, but he denied any part in arranging their travels. Olusanya also described in detail other drug transactions he conducted in the Wisconsin area with people that he knew to be associated with Okafor.

Olusanya later pleaded guilty to possession with intent to distribute 1,992 grams of heroin. Prior to sentencing Olusanya moved for a downward departure under the safety valve provision, *see* 18 U.S.C.A. § 3553(f); U.S.S.G. § 5C1.2, arguing that although the statute prescribed a mandatory minimum sentence of ten years, he should be sentenced to a lower term. After written motions and oral argument from both sides, the district court concluded that Olusanya did not qualify for a downward departure and sentenced him to the statutory mandatory minimum of 120 months' imprisonment.

To qualify for the safety valve provision, a defendant must have 1) no more than one criminal history point, 2) used no violence, threats of violence, or dangerous weapons in conjunction with the offense, 3) caused neither death or serious bodily injury to any person, 4) been neither an organizer, leader, manager, or supervisor of others or have engaged in a continuing criminal enterprise, and 5) disclosed not later than sentencing all information and evidence the defendant has

concerning the offense(s) that were part of the same course of conduct, common scheme, or plan. *See* 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2; *see also United States v. Marin,* 144 F.3d 1085, 1091 (7th Cir. 1998). On appeal the parties agree, as they did at sentencing, that Olusanya meets the first four requirements. Thus, the only issue is whether Olusanya truthfully provided all the information he had with respect to this and similar offenses, a factual determination which we review only for clear error. *See United States v. Galbraith,* 200 F.3d 1006, 1016 (7th Cir. 2000).

At sentencing Olusanya called Special Agent Plambeck, who was present at the debriefing sessions, to testify about the "other information" he believed Olusanya had withheld from the government. Agent Plambeck testified, consistent with his affidavit submitted by the government, that he was aware of ten packages containing drugs that were sent to associates of Okafor that Olusanya had not discussed with the government. Moreover, Agent Plambeck testified that two confidential informants had stated that Olusanya arranged and paid for them to travel from Nigeria to Milwaukee as drug couriers. One informant also reported to Agent Plambeck that Olusanya had personally assisted him in securing a passport. On cross-examination by the government, Agent Plambeck confirmed that Olusanya had not revealed any of this evidence during his debriefing sessions. After conferring with counsel, Olusanya chose not to testify or present any other evidence.

■ Olusanya now argues that any information regarding drug couriers or the receipt of drug shipments is not part of the same course of conduct and therefore he should not have been required to reveal this information. To determine whether the events are part of the same course of conduct, a district court should consider the "similarity, regularity and temporal proximity of the incidents in question." *See United States v. Spry,* 190 F.3d 829, 836 (7th Cir.1999) (quoting *United States v. Cedano–Rojas,* 999 F.2d 1175, 1180 (7th Cir.1993)). In his brief Olusanya does not attempt to disprove the relatedness of any of these drug transactions. In fact, he makes no argument other than his conclusory statement that he does not believe the events are similar enough to warrant disclosure. Given Agent Plambeck's uncontested description of Olusanya's involvement as a national drug trafficking scheme that operated on a continuous basis for almost two years, the district court did not clearly err in finding these other transactions constituted the same course of conduct as the charged offense that should have been disclosed to the government.

■ In his brief Olusanya does take issue with the fact that the district court sustained several of the government's objections during his questioning of Agent Plambeck. The government objected to several of Olusanya's questions directed toward uncovering the names and identifying details of the confidential informants, and Olusanya argues that by sustaining these objections, the district court prevented him from questioning the reliability of Agent Plambeck's information. The district court found, however, that "[d]uring the course of this hearing it has not been pointed out in any way, shape, form or fashion that statements that are attributed to the informants and citizen witnesses are inaccurate or distorted in any way," and we are reluctant to find clear error in a sentencing court's credibility determination. *See United States v. Berthiaume,* 233 F.3d 1000, 1002 (7th Cir.2000). Moreover, Olusanya made no attempt to convince the district court that his need to know the informants' identities outweighed

the public's interest in protecting the flow of information, which he must show to overcome the government's limited privilege to withhold the identity of confidential informants. *See United States v. Jefferson*, 252 F.3d 937, 940–41 (7th Cir.2001) (citing *Roviaro v. United States*, 353 U.S. 53, 60, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957)); *United States v. Valles*, 41 F.3d 355, 358 (7th Cir.1994).

██ Also, Olusanya seems to suggest that the burden of proving a defendant's eligibility for the safety valve reduction rests with the government. But we have made clear that it is the defendant's duty to prove he has given complete and truthful disclosure to the government, *see United States v. Arrington*, 73 F.3d 144, 148 (7th Cir.1996), and here the district court concluded that because Olusanya had failed to inform the government about arranging transportation for Nigerian couriers, he simply had not been entirely truthful. We recognize the unique ability of the district court to make the necessary credibility determinations in the "safety valve" context, *see United States v. Ramirez*, 94 F.3d 1095, 1102 (7th Cir.1996), and therefore the district court's assessment of Olusanya's lack of candor, especially given Agent Plambeck's testimony, is entirely reasonable. Thus, the district court did not clearly err in denying Olusanya's request for a safety valve departure.

AFFIRMED.